CHASE MANHATTAN BANK, N.A.,
individually and as agent,

v.

William R. HARRIS.

Civ. No. 5:92–cv–188 (WWE).

United States District Court,
D. Connecticut.

Aug. 11, 1995.

Robert A. Izard, Jr., Robinson & Cole, Hartford, CT, for Bank Brussels Lambert, Banque Indosuez Skopbank, Swiss Bank Corp.

James S. Morris, O'Connor, Morris & Jones, Greenwich, CT, Michael J. Jones, Ivey, Barnum & O'Mara, Greenwich, CT, for William R. Harris.

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Chase Manhattan Bank commenced this action, both individually and as agent for several other banks, to recover monies due under a Guaranty Agreement. The other banks are Bank Brussels Lambert, Banque Indosuez, Skopbank and the Swiss Bank Corporation. Plaintiff also moves individually to recover monies due arising out of fraud allegedly perpetrated by defendant in connection with the Revolving Credit Agreement for which the Guaranty was executed. Plaintiff's application for a prejudgment remedy of attachment was granted by this court in 1992. Plaintiff now moves for summary judgment on all claims pursuant to Fed. R.Civ.P. 56. Defendant, although represented and properly served, did not respond to the motion. For the following reasons, plaintiff's motion will be denied as to Count One and granted as to Count Two.

### FACTS

The affidavits submitted by plaintiff indicate that on or about January 1, 1990, plaintiff and several other banks entered into a Revolving Credit Agreement with AroChem Corporation and AroChem International, Inc. ("AroChem") to finance the short-term working capital needs relating to the operations of AroChem and to fund the issuance of letters of credit for AroChem's account. Plaintiff is the agent for the other banks under the Revolving Credit Agreement. On October 25, 1991 and December 4, 1991, plaintiff and AroChem entered into Supplemental Agreements to the Revolving Credit Agreement pursuant to which plaintiff extended additional credit to AroChem.

Robert A. Izard, Jr., Christopher John Hug, Glenn D. Woods, Robinson & Cole, Hartford, CT, Richard C. Tufaro, Milbank, Tweed, Hadley & McCoy, Washington, DC, for Chase Manhattan Bank, N.A.

It is undisputed that AroChem International operated a petroleum and petrochemical refinery complex in Puerto Rico. AroChem, whose principal offices were in Connecticut, traded in petroleum and petroleum products, as well as provided certain management services to AroChem International. Defendant was the president and chief executive officer of both companies and the record owner of sixty percent of the companies' stock.

### The Guaranty

On December 5, 1991, defendant entered into an Amended and Restated Guaranty ("Guaranty") and a Pledge Agreement, whereby he guaranteed payment of the amounts due under each Supplemental Agreement to the extent provided by the Guaranty. The Pledge Agreement provided that, as security for the Guaranty, defendant pledged certain securities.

The Guaranty provides that defendant is liable if and to the extent that the Net Assets of AroChem, as defined therein, are insufficient to pay the amounts due under each of the Supplemental Agreements. Pursuant to the Guaranty, defendant was also liable for the lesser of "(A) the greater of (1) $2,500,-000, and (2) the value of the Security (as such term is defined herein), as such value is established by any sale of the Security, and (b) all Unpaid Amounts."

As of March, 1992, AroChem was in default under the terms of the Supplemental Agreements for nonpayment of the principal and interest due. The amount due was in excess of $9,000,000. On December 23, 1992, plaintiff notified defendant by telecopier of AroChem's default. Defendant has failed to pay the amounts due or otherwise cure the default within the 90–day time period specified in the Guaranty. The Financial Statements of the issuer of the securities pledged by defendant indicate that the securities have no value. Accordingly, plaintiff claims that the amount due from defendant under the Guaranty is at least $2,500,000 plus interest and costs of collection, including attorney's fees.

### The Agreement

Defendant admits that AroChem entered into a Revolving Credit Agreement, consisting of the first agreement and six extensions (collectively the "Agreement"), with plaintiff and that the Agreement permitted AroChem to borrow up to $245 million. The loans were secured by AroChem's inventory of petroleum and petroleum products as well as AroChem's receivables and cash.

On January 10, 1995, a criminal judgment was entered against defendant in the United States District Court, Southern District of New York following a jury trial. Defendant was found guilty of Conspiracy to Commit Wire/Bank Fraud in violation of 18 U.S.C. § 371, Bank Fraud in violation of 18 U.S.C. § 1344, Money Laundering in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2, Wire Fraud in violation of 18 U.S.C. § 1343, Continuing Financial Criminal Enterprise in violation 18 U.S.C. § 225, and Criminal Forfeiture in violation 18 U.S.C. §§ 982(a)(1) and (b)(2). The counts in the indictment pursuant to which defendant was found guilty contained all of the following factual allegations. They were denied by defendant in his answer to plaintiff's amended complaint.

Plaintiff alleges that pursuant to the Agreement, AroChem was required to maintain certain levels of tangible net worth, net income, working capital and inventory, and to limit the net trading positions it held. To enable plaintiff to determine whether the Agreement's conditions were being met, AroChem was required to submit periodic borrowing base reports to plaintiff setting forth AroChem's assets, liabilities and trading positions. Among other things, these reports were to identify AroChem's net trading positions, and the crude oil inventory and forward purchases of inventory that AroChem had purchased for refining at its refinery in Puerto Rico. Forward purchase inventory consists of contracts for future delivery of petroleum or related products.

Plaintiff alleges that between, in or about January, 1990 and on or about December 9, 1991, AroChem periodically submitted borrowing base reports in which it represented that the eligible collateral securing the loans exceeded $200 million. As of November 30,

1991, based upon those reports, AroChem had borrowed about $200 million from plaintiff. However, the actual eligible collateral held by AroChem as of that date was less than $65 million.

On or about February 14, 1992, plaintiff filed a petition in the United States Bankruptcy Court in the District of Connecticut seeking the involuntary bankruptcy of Aro-Chem. As of April 5, 1995, plaintiff alleges that it and the other banks have lost in excess of $150 million on their loans.

Plaintiff alleges that throughout 1990 and 1991, defendant engaged in a widespread pattern of fraud, deceit and deception designed to induce plaintiff to lend more than $200 million to AroChem. It alleges that in furtherance of this scheme, in or around April, 1990, defendant created and caused to be created false and fraudulent documentation, including invoices and warehouse receipts, which purported to show that Aro-Chem International had entered into contracts for the delivery of about $60 million worth of Tapis crude oil which it held in Malaysia. Plaintiff alleges that between, on or about April 29, 1990 and on or about November 4, 1990, defendant caused to be submitted to plaintiff a series of borrowing base reports that represented that AroChem possessed that inventory even though during that time period, AroChem did not directly or indirectly own or hold the inventory.

Plaintiff also alleges that in furtherance of the scheme, in or about May 1991, defendant created or caused to be created at least three additional sham contracts that falsely stated that AroChem International owned about $48 million worth of petroleum condensate. From that time until about December 9, 1991, defendant caused to be submitted to plaintiff several borrowing base reports that fraudulently represented that AroChem's assets included this inventory.

Plaintiff also alleges that throughout 1990 and 1991, defendant caused AroChem to engage in trading practices in violation of its contractual obligations to plaintiff. Specifically, defendant repeatedly caused AroChem to hold net open positions far in excess of the one million barrel net trading position limitation imposed by the Agreement. Plaintiff alleges that, in doing so, defendant exposed AroChem and plaintiff to excessive trading risk and that defendant concealed these trading practices from plaintiff.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

However, the opposing party "may not rest on the mere allegations or denials of [its] pleading, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." If the opposing party does not so respond, "summary judgment, if appropriate, shall be entered against the [opposing] party." Fed.R.Civ.P. 56(e).

### Count One

Count One of the complaint alleges that plaintiff is entitled to recover from defendant on the Guaranty. The Guaranty provides that "all rights, obligations and liabilities arising hereunder shall be governed by and construed according to the laws of the State of New York." To establish a *prima facie* case of entitlement to recover on the Guaranty pursuant to those laws, plaintiff must show (1) that it is owed a debt from a third party; (2) that defendant made a guaranty of payment of the debt; and (3) that the debt has not been paid by either the third party or defendant. *Chemical Bank v. Haseotes,* 13 F.3d 569, 573 (2d Cir.1994).

Plaintiff has met its burden to establish the first two prongs of it *prima facie* case.

To establish the first prong, plaintiff has submitted affidavits by Cathleen Callahan and Peter Galbraith, Vice Presidents of Chase Manhattan Bank. Both affidavits state that AroChem (the third party) is in default for non-payment of the principal and interest due that exceeded $9,000,000 as of March 24, 1992.

To show the second prong, plaintiff submitted a copy of the signed Guaranty and stated that there is no dispute that it was properly executed by defendant. Defendant's answer does not contest this fact.

Plaintiff has not specifically addressed the third prong. The complaint and answer indicate that it is undisputed that defendant has not paid the debt, at least as of January 14, 1994. However, defendant, in his answer, stated that he had no knowledge as the whether AroChem had paid its debt. The affidavits by the two Chase Vice Presidents indicating that AroChem has not paid its debts are dated March, 1992, more than three years ago. The fact that AroChem was placed in bankruptcy does not establish that it has failed to pay any part of the debt since that time. Accordingly, the court must conclude that plaintiff has not met its burden to show that the debt has not been paid by AroChem and summary judgment as to Count One will be denied without prejudice to renew.

### Count Two

The second count, alleged by plaintiff individually, rests in common law fraud. It alleges that defendant fraudulently made false statements to plaintiff and that defendant fraudulently submitted false reports concerning AroChem's trading practices when he had, in fact, caused AroChem to engage in excessive speculative trading practices in violation of the Agreement. Both actions were intended to induce and did induce plaintiff to loan AroChem money. Plaintiff contends that, as Harris was criminally convicted pursuant to an indictment in which all of the material elements of common law fraud were alleged, there is no genuine issue of material fact based upon the doctrine of collateral estoppel. For the following reasons, summary judgment as to this count will be granted.

As defendant's criminal conviction was in federal court, federal law governs its collateral estoppel effect in this diversity action. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Mutuality of estoppel is no longer an absolute requirement under federal law, thereby permitting plaintiff, a third party, to assert collateral estoppel against defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). A judgment of criminal conviction "is preclusive in favor of a third person in a [later] civil action ... against the defendant in the criminal prosecution" where the defendant was found guilty, because the government bears a higher burden of proof in the criminal context. Restatement (Second) of Judgments § 85 (1980); *See United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978).

For collateral estoppel to apply, four elements must be established: (1) the issues of both proceedings must be identical; (2) the relevant issues must have been actually litigated and decided in the prior proceeding; (3) there must have been a "full and fair opportunity" for the litigation of the issues in the prior proceeding; and (4) the issues must have been necessary to support a valid and final judgment on the merits. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d at 44.

As a preliminary matter, the court notes that plaintiff has not stated whether or not defendant appealed his conviction or whether that appeal has been decided. However, even if defendant's appeal is pending, the pendency of an appeal in a criminal case does not generally deprive the judgment of its preclusive effect in a related civil case. *U.S. v. Int'l Broth. of Teamsters*, 905 F.2d 610, 621 (2d Cir.1990).

The elements required for defendant's criminal conviction of statutory bank fraud pursuant to 18 U.S.C. § 1344 are similar but not identical to those required for a common law fraud claim. The essential elements to show common law fraud under Connecticut law are that: (1) a false representa-

tion was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. *Weisman v. Mary Kaspar*, 233 Conn. 531, 539, 661 A.2d 530 (1995) (citations omitted).

 A person commits bank fraud if he "knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. Thus, the statutory elements are identical to the first three elements of common law fraud: false representations, knowingly made, with the purpose of obtaining something of value from a bank. As these issues were required for conviction, they were fully and fairly litigated, and plaintiff has met its burden to show them pursuant to the principles of collateral estoppel.

 However, unlike common law fraud, it was not necessary for the banks to have actually acted upon defendant's false statements in order for defendant to be found guilty of violating 18 U.S.C. § 1344. *U.S. v. LeDonne*, 21 F.3d 1418, 1426 (7th Cir.1994); *U.S. v. Hutchison*, 22 F.3d 846, 851 (9th Cir.1993); *U.S. v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987). As such a finding was not essential, the court is unable to determine, solely from the fact defendant was convicted, whether or not this issue was fully and fairly litigated or whether it was necessary to support a final judgment on the merits.

 In any case, the court concludes that plaintiff has met its burden to show it acted upon defendant's false representations by the fact that it made loans to defendant. The criminal indictment states that the banks loaned AroChem about $200 million based upon the false financial statements and borrowing base reports submitted by defendant. As part of defendant's sentence, he was ordered to pay restitution to the plaintiff and the banks for whom it acts as agent in this case, in the amount of "$200 million as the interests of these banks may appear." Therefore, it must be concluded that the issue of whether plaintiff acted upon defendant's false representations by making loans was fully and fairly litigated, and that it was necessary to support the judgment. Accordingly, plaintiff has met its burden to establish all the elements of common law fraud and summary judgment will be entered in its favor as to Count Two of the complaint.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment [47] is DENIED without prejudice to renew as to Count One and GRANTED as to Count Two.

SO ORDERED.