Rebecca SKYDELL, on behalf of herself and all others similarly situated, Plaintiff,

v.

ARES–SERONO S.A. and Tucker Anthony, Inc., Defendants.

No. 94 Civ. 3539 (KTD).

United States District Court, S.D. New York.

June 8, 1995.

Wolf Haldenstein Adler Freeman & Herz, New York City (Michael Jaffe, Neil L. Zola, of counsel), and Charles D. Maurer, New York City, for plaintiff Rebecca Skydell, on behalf of herself and all others similarly situated.

Patterson, Belknap, Webb & Tyler, New York City (Blair Axel, of counsel), and Goodwin, Procter & Hoar, Boston, MA (Stephen D. Poss, James C. Rehnquist, of counsel), for defendant Ares–Serono S.A.

Patterson, Belknap, Webb & Tyler, New York City (Blair Axel, of counsel), and Ropes & Gray, Boston, MA (John D. Donovan, Jr., Kurt S. Kusiak, of counsel), for defendant Tucker Anthony, Inc.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

On May 13, 1994, Plaintiff Rebecca Skydell filed the present class action complaint on behalf of herself and all others similarly situated, alleging that Defendants Ares–Serono S.A., and Tucker Anthony, Inc., had violated § 14(e) of the Williams Act, 15 U.S.C. § 78n(e), and the rules and regulations promulgated thereunder by the Securities and Exchange Commission. The relief sought by Plaintiff includes a declaratory judgment stating the effect that this is a proper class action; a declaratory judgment holding that Defendants violated § 14(e); injunctive relief against Defendants' use of the allegedly defective offering circular; a damages award to Plaintiff and the class; and an award to Plaintiff of her costs and expenses, including reasonable attorneys', accountants', and experts' fees. On May 25, 1994, a hearing was held on an order to show cause brought by Ares–Serono for an expedited motion to dis-

miss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), as well as for an expedited briefing schedule for any motion by Plaintiff for an injunction. At the hearing, I determined to hold the motions over until June 6, 1994. In the meantime, on May 27, 1994, Tucker Anthony also moved to dismiss the complaint as applied to it pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b). At the June 6, 1995, hearing, I indicated my intention to take the motions under consideration.

For the following reasons, Tucker Anthony's motion to dismiss is granted. Ares–Serono's motion to dismiss pursuant to Rule 9(b) is denied, while its motion to dismiss pursuant to Rule 12(b)(6) will be treated as a summary judgment motion pursuant to Fed. R.Civ.P. 56.

### I.

When ruling upon a motion to dismiss a complaint pursuant to Rule 12(b)(6), all allegations in the complaint should be interpreted in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court should dismiss the complaint only if there exists no set of facts which could be construed so as to entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Consequently, all factual allegations contained in the present complaint will be presumed true for purposes of this motion.

Ares–Serono is a company organized under the laws of Switzerland, which operates in over twenty countries, and which markets products in over seventy countries. Through one of its wholly-owned subsidiaries, Ares–Serono owns approximately 76% of the shares of InterPharm Laboratories Limited ("InterPharm").

InterPharm was incorporated in Israel in 1978, and its shares are publicly traded on NASDAQ. Plaintiff is an owner of InterPharm common stock. The plaintiff class consists of all persons or entities who owned InterPharm stock as of May 6, 1994 (but not including Defendants or their affiliates), or

who acquired their shares prior to the close of the tender offer.[1]

InterPharm is engaged in the research, development, and production of biological and related healthcare products, most notably bulk human fibroblast. The bulk human fibroblast is processed by InterPharm into a pharmaceutical product which for the past decade has been sold under the name "Frone." Derived from human cells, Frone can only be produced in small amounts.

Over the past few years, InterPharm has developed a product called bulk Recombinant Beta Interferon ("Rebif"), which biologically is very similar if not identical to Frone. However, Rebif costs 90%–95% less than Frone to produce. In addition, Rebif has the potential to be produced and sold in larger quantities than Frone. At present, Rebif is undergoing clinical trials as a potential treatment for hepatitis B, hepatitis C, genital warts, and adjuvant therapy in breast and uterine cancer. Also, Ares–Serono has announced plans to secure approval of Rebif as a treatment for multiple sclerosis. Rebif has been granted scientific approval in Italy for the same purposes as Frone, and Ares–Serono currently sells it for approximately the same price it sells Frone in Italy. InterPharm's technology has been protected by patents and other contractual and proprietary measures.

On or about May 6, 1994, in an attempt to gain control of InterPharm by acquiring a total of 90% of that corporation's shares, Ares–Serono distributed to InterPharm's shareholders an offering circular for the purchase of all outstanding shares of InterPharm which it did not already own at a price of $22 per share. In this offering circular announcing its tender offer, Ares–Serono allegedly misrepresented the supposed advantages of tendering shares pursuant to the offering circular; the true value of InterPharm, especially considering the future potential for Rebif; and the independence and work of its financial advisor, Tucker Anthony. It is also alleged that Ares–Serono failed to disclose the business possi-

bilities of a new product called IL–6. Likewise, Ares–Serono did not mention in the offering circular that at least since 1990, Ares–Serono had systematically looted InterPharm in order to drive down the price of the shares of the latter company and thereby reduce the costs associated with the anticipated tender offer.

The offering circular also mentions several licenses and other arrangements between InterPharm and Ares–Serono, which are allegedly one-sided, operating predominantly to the benefit of Ares–Serono. According to the complaint, Ares–Serono was able to acquire these arrangements by virtue of its power to appoint all of the members of InterPharm's Board of Directors and the affiliation of 5 of the 12 members of the Board with Ares–Serono. Allegedly, the Board of Directors enabled Ares–Serono to strip InterPharm of its most valuable assets. Plaintiff also claims that the offering circular fails to mention the overwhelming benefit derived by Ares–Serono due to these unfair, one-sided arrangements with InterPharm.

According to Plaintiff, Ares–Serono's dealings with InterPharm caused the price of InterPharm stock to artificially decline to well below market value. Supposedly, the $22 per share set forth in the tender offer represents such an artificially depressed price for the minority shares.

Finally, the complaint states that Defendants acted either with full knowledge or recklessly with regard to the allegedly material misstatements and omissions in the offering circular, which members of the class are relying upon in deciding whether or not to sell their shares pursuant to the tender offer.

## II.

## DISCUSSION

A. Sufficiency of Claims Under the Williams Act

■ Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e), is a broad antifraud provision aimed specifically at tender offers for securities. *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 10–11, 105 S.Ct. 2458, 2463–64, 86 L.Ed.2d 1 (1985). The purpose of the Williams Act is to compel the disclo-

---

1. See *supra* at 6 ff.

sure of information pertaining to tender offers and offering parties to the public shareholders of target companies, thereby enabling those shareholders to make informed decisions regarding the tender offers for their stock. *Buffalo Forge Co. v. Ogden Corp.*, 717 F.2d 757, 760 (2d Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983). According to § 14(e), it is

> unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

In *Schreiber* the Supreme Court held that in this context, for an act to be "manipulative," and therefore violative of § 14(e), there must be either misrepresentation or nondisclosure of a material fact or facts. 472 U.S. at 12, 105 S.Ct. at 2464.

■ Aside from its focus on tender offers rather than the purchase or sale of securities, the elements of a § 14(e) claim are the same as those for Rule 10b–5 of the Securities Exchange Act, 17 C.F.R. 240.10b–5. *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *In re Gulf Oil/Cities Service Tender Offer Lit.*, 725 F.Supp. 712, 743 (S.D.N.Y.1989). Thus, to demonstrate a violation of § 14(e), a plaintiff must show "that the defendant either (1) knew the material facts that were misstated or omitted, or (2) failed or refused to ascertain such facts when they were available to him or could have been discovered by him with reasonable effort." *Chris–Craft*, 480 F.2d at 364. While recklessness would satisfy the scienter requirement, mere negligence would not. *Id.* at 363.

In determining a § 14(e) motion, the court should refrain from considering the substantive fairness of any particular tender offer, for "the quality of any offer is a matter for the marketplace." *Schreiber*, 472 U.S. at 12, 105 S.Ct. at 2464.

■ The present complaint fails to adequately plead either a misrepresentation or a nondisclosure by Tucker Anthony. In fact, the complaint mentions Tucker Anthony by name in only four paragraphs. In ¶ 2, the complaint states that Ares–Serono misrepresented the work of its financial advisor, Tucker Anthony. Paragraph 9 is part of the section identifying the parties, and does not contain any allegations regarding the substance of Plaintiff's claims. In ¶ 37 the complaint alleges that Ares–Serono misrepresented the independence of Tucker Anthony and its opinion regarding the tender offer. Finally, in ¶ 38 Plaintiff claims that "Tucker Anthony was merely retained as window dressing to create the facade that the Offer is indeed fair to the shareholders." In these paragraphs, Plaintiff alleges misrepresentations or non-disclosures committed by Ares–Serono. Nowhere does the complaint allege that Tucker Anthony itself committed any misrepresentations or non-disclosures. Thus, with regard to Tucker Anthony, Plaintiff has failed to state a claim upon which relief may be granted under the Williams Act.

**B. Particularity Requirements of Rule 9(b)**

■ To state a claim for fraud under New York common law, the complaint must allege that the defendant knowingly made a false statement of material fact with the intent to induce the plaintiff's reliance, and also that the plaintiff did in fact rely on that false statement to its detriment. *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir.1991) (citations omitted); *Cramer v. Devon Group, Inc.*, 774 F.Supp. 176, 181 (S.D.N.Y.1991). The Federal Rules of Civil Procedure further require that fraud be pleaded with particularity. Fed.R.Civ.P. 9(b). However, Rule 9(b) does not require plaintiffs to set forth their evidence in the complaint. *Lazzaro v. Manber*, 701 F.Supp. 353, 372–73 (E.D.N.Y.1988) (finding general circumstances, content, and perpetrator of each fraudulent representation sufficient pleading). To satisfy the requirements of Rule 9(b), the complaint need only give particulars regarding the fraudulent content of the speech, the time and place at which the

statements were made, and the identity of the party responsible for the fraudulent statements. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985). Rule 9(b) expressly states that scienter may be pleaded in general terms. *Belden,* 754 F.2d at 1070.

██ Plaintiff has failed to plead fraud against Tucker Anthony with sufficient particularity to withstand a dismissal pursuant to Fed.R.Civ.P. 9(b). The complaint fails to allege that Tucker Anthony committed any misstatements or non-disclosures, but rather attributes all of the complained-of statements or omissions to Ares–Serono. Additionally, what few references there are to Tucker Anthony fail to identify any individual who might be linked to such statements or omissions, had any been pleaded in the complaint. Therefore, Plaintiff has failed to plead fraud against Tucker Anthony with the particularity demanded of Rule 9(b).

██ However, the complaint does properly address the time, place, and content of Ares–Serono's alleged misstatements and omissions. Moreover, the complaint adequately attributes responsibility for the misstatements and omissions to Ares–Serono.[2] Finally, Plaintiff has sufficiently pleaded scienter with regard to Ares–Serono. According to Plaintiff, Ares–Serono had been attempting to buy the shares of minority shareholders of InterPharm since 1990. In furtherance of its plan to purchase these shares of common stock at deflated prices, Ares–Sero-

no allegedly "systematically looted the Company in order to artificially deflate the value of its stock ..."[3] (Compl. ¶ 2). Thus, the complaint as pleaded satisfies Rule 9(b).

### III.

### CONCLUSION

Tucker Anthony's motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), or in the alternative for failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b), is hereby granted. The complaint against Tucker Anthony is dismissed.

Ares–Serono's motion to dismiss the complaint for failure to plead fraud with particularity, pursuant to Fed.R.Civ.P. 9(b), is hereby denied.

As for Ares–Serono's motion to dismiss under Rule 12(b)(6), both parties have referred to documents other than the complaint, specifically the Offer to Purchase and its 26 pages of attachments. Therefore, I will treat this motion as one for summary judgment, pursuant to Fed.R.Civ.P. 56. The parties are to submit any additional affidavits or other supporting documentation within twenty (20) days of the date of this order.

SO ORDERED.

---

**2.** In general, allegedly fraudulent statements must be linked to individual speakers; vague references to "defendants" as the speakers are insufficient. *Mills v. Polar Molecular Corporation,* 12 F.3d 1170, 1175 (2d Cir.1993). Attributing statements to a corporate entity does not suffice to link those statements to any individuals, be they directors or otherwise. *See id.* However, in the present case, Plaintiff has not named any individuals as defendants, but rather has named only corporate entities in their capacities as such. Therefore Plaintiff has satisfied Rule 9(b) by attributing the misstatements or omissions to Ares–Serono itself, and she need not identify any particular individuals at this stage of the proceedings.

**3.** Although Plaintiff has pleaded sufficiently to survive this Rule 9(b) motion to dismiss, I have serious doubts as to the legitimacy of her claims and her ability to prove them. Among Plaintiff's contentions are that Ares–Serono failed to dis-

close that its "sole motivation for the Tender Offer was to acquire InterPharm, a valuable company, at a bargain price," (compl. ¶ 23); failed to disclose that InterPharm would receive "staggering" financial gains from the sale of Rebif in the future (compl. ¶ 23); and that Ares–Serono failed to disclose that it effectively controlled the Board of Directors of InterPharm, which enabled it to arrange deals between the two companies which allegedly could have been more lucrative to InterPharm under different terms than those agreed upon (compl. ¶¶ 28–29). The dubious nature of these and other allegations, and the elusive legal bases under which they would be actionable, lead me to have serious doubts as to whether or not the complaint is frivolous and/or not brought in good faith within the meaning of Rule 11. However, given the disposition of the present motion, I will refrain from addressing these concerns until Plaintiff has had an opportunity to expand upon her allegations.